### CRAWFORD J. WEST v. JOSEPH KEETON ET AL.

Delivered October 30, 1897.

**1. Common Source of Title—Community Property.**

Where the evidence in trespass to try title showed the common source of title in a married woman, holding the legal title, and through whose will both parties claimed, defendants could not avoid this proof of common source by showing that the title was acquired during coverture and so was presumptively community property, and that the married woman left a husband surviving, since this showed only an equitable title outstanding, with which defendants did not connect themselves.

**2. Probate Sale—Description of Land.**

Where, in an application for a probate sale of land, and in the order of sale, the land is described as "an undivided interest of 75 acres in and to the 320-acre James De Armon survey," fully and accurately describing the 320 acres, this is a sufficient description.

**3. Probate Records—Entry on Judge's Docket Only.**

The provisions of article 1853, Revised Statutes of 1895, declaring every probate order a nullity unless entered of record, does not invalidate an order entered alone on the judge's probate docket, and not carried into the minutes, since article 1845 designates such docket as a record book.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*Cobb & Avery*, for appellant.—1. When plaintiff and defendants claim under a common source, there is a strong presumption that the common source had acquired and owned a good title, and the evidence herein was insufficient to rebut this presumption. Rice v. Railway, 87 Texas, 90; House v. Reavis, 35 S. W. Rep., 1063; Foster v. Johnson, 37 S. W. Rep., 67.

2. In a guardian's sale of land, the application to sell, order to sell, and report of sale must give a description of the land sufficient to identify it, and the report must be filed. Rev. Stats. 1895, arts 2660, 2673-2675; Harris v. Shafer, 86 Texas, 314; Willis v. Burke, 27 S. W. Rep., 217.

3. Since the Revised Statutes of 1879, it is necessary, in order to pass title, that the confirmation of a guardian's sale of land should be entered in the minutes of the court, and no other evidence is admissible except a certified copy of such order, unless the minutes are destroyed. Rev. Stats, 1895, arts. 2555, 2557, 2558, 2560, 2675, 1846, 1853, 1872; Branch v. Hanrick, 70 Texas, 731; Brown v. Reese, 67 Texas, 318; Railway v. Moore, 32 S. W. Rep., 379; Swearingen v. Wilson, 2 Texas Civ. App., 157.

*Frost, Neblett & Blanding* and *J. H. Bates,* for appellees.—1. Where plaintiff and defendant claim from a common source, plaintiff must show a superior title under that source. And the defendant may show as a defense (1) a superior outstanding title under the common source, without connecting himself with such title; (2) a superior outstanding title to the common source, which never vested in the common source; (3) a superior outstanding title which defendant has acquired by limitation or otherwise. Reid v. Railway, 87 Texas, 90; Cox v. Hart, 145 U. S., 376; Keys v. Mason, 44 Texas, 142; Burns v. Goff, 79 Texas, 236.

2. It was not necessary that the order of the probate court of Dallas County confirming the sale of seventy-five acres of the land in controversy by the guardian should be entered in the minutes of the probate court before the title would pass. The entry on the judge's docket showing the order was made is all that is necessary. Neal v. Cody, 26 Texas, 290; Robertson v. Johnson, 57 Texas, 62; Callaway v. Nicols, 47 Texas, 327; Butler v. Stephens, 77 Texas, 599.

FINLEY, CHIEF JUSTICE.—Plaintiff, Crawford J. West, instituted this suit in Navarro County, Texas, against Joseph Keeton, and several other defendants. The action is one of trespass to try title to two tracts of land situated in said county, both tracts alleged to be embraced within the James De Armon 320 acres survey—one containing 100 acres and the other 75 acres—and each described by metes and bounds. The petition also contains appropriate allegations, and a prayer for partition in case it shall be determined that defendants own any interest in said lands. The cause was tried in the court below by the aid of a jury, and a verdict and judgment were rendered in favor of the defendants for the entire amount of the land involved in this suit.

*Opinion.*—The first question arises upon the admission of evidence intended to overcome proof of common source. Plaintiff showed regular chain of title from the government down to J. P. McCain, covering the 320-acre James De Armon survey. Plaintiff next introduced in evidence a deed from J. P. McCain and his wife, Lou J. McCain, to Malinda J. Hardeman, conveying to her the 320-acre James De Armon survey, describing it by metes and bounds as in the patent. This deed was dated November 22, 1869, and recites the consideration of $379 paid, and is in the usual form of a warranty deed, conveying the land to Malinda J. Hardeman, her heirs and assigns, in terms of an absolute fee simple conveyance. Plaintiff then introduced in evidence the will of Malinda J. Hardeman, which was shown to have been duly probated, which specifically devised an undivided interest of 220 acres in the 320-acre James De Armon survey to Crawford J. West; and under the terms of this will the balance of this 320-acre tract, namely, 100 acres, was devised under general provisions of the will to W. J. Newbolt, John G. West, Lou Willie West, and Crawford J. West, in equal undivided portions. Plaintiff further showed that John G. West and Lou Willie West conveyed to him

all the interest they owned in said 320-acre survey on June 28, 1895. Plaintiff then showed that the defendants claimed under the devisees named in said will, and that the defendant's title was deraigned through said will of Malinda J. Hardeman, the defendants claiming the interest held by said devisees and derived through the will of Mrs. Hardeman. In other words, plaintiff's proof showed that both plaintiff and defendant claimed through and under the will of Mrs. Hardeman, and claimed the interests therein devised.

To overcome the force of this proof of common source of title appellees were permitted to prove that Malinda J. Hardeman was a married woman at the time the 320-acre James De Armon survey was conveyed to her by J. P. McCain; that her husband survived her about ten years, and died leaving children, and that the records failed to show that he or his heirs had ever conveyed any interest in said land. There was no effort to connect the claim of appellees with the supposed title of Malinda J. Hardeman's husband to a community interest of one-half of the land. As before stated, the deed to Malinda J. Hardeman recited a cash consideration; and it was such a deed as would ordinarily, upon proof of the marriage state, give rise to the presumption that the property belonged to the community estate of the husband and wife. This evidence would not be sufficient to overcome the proof of common source, regardless of the question of its legal competency. The presumption that the common source acquired the title will prevail until it is shown that there is a superior title to that held by the common source, and that defendants have acquired such superior title, or that it never vested in the common source. Rice v. Railway, 87 Texas, 93.

Neither of these essentials were shown by the evidence in question. The title papers not showing title in any other person inconsistent with the title of plaintiff, to show the extraneous fact that Malinda J. Hardeman was a married woman at the time the land was conveyed to her by an apparent onerous title, would only be proof of a presumption that the property was community, and proof of such presumption would not be sufficient to destroy the force of the proof of common source. Notwithstanding she was married at the time this deed was made to her, and notwithstanding the deed may have failed to recite that it was intended to be her separate estate, still such a state of facts would only give rise to the presumption that the property was community property, and this presumption could be overthrown by proof that the property was purchased with her separate means, or intended for her separate benefit, except in so far as the proposition may be affected by our registration laws. To hold otherwise would be to recognize the right to meet and overcome a presumption arising out of a rule of evidence by showing a state of facts by which a contrary presumption would ordinarily arise.

But the evidence was not only insufficient in probative effect, but it was also legally incompetent, and should have been excluded upon objection urged against it. The deed from McCain to Mrs. Malinda J. Hardeman, as above stated, in so far as the terms of the conveyance be

concerned, vests an absolute title in the vendee. When a deed is made to the wife and purports to convey to her an absolute fee simple title to the land, it is held that the apparent or technical legal title to all the land conveyed is in the wife, while the equitable title to one-half is in the husband. Patty v. Middleton, 82 Texas, 586; Edwards v. Brown, 68 Texas, 329; Wills v. Moore, 62 Texas, 610; Stiles v. Jaffert, 84 Texas, 96.

It is also well established that an outstanding equity in land sued for can not be shown as a defense unless defendant connects his title with such equity. Ballard v. Carmichael, 83 Texas, 355; and cases collated in section 272, page 300, Texas Civil Digest (Buckler), volume 3. It will be seen, therefore, that the evidence in question was inadmissible, and should not have been permitted to go to the jury. In this same connection, we will state that the charge of the court instructing the jury that the land was the community property of Mrs. Hardeman and her husband, and that her said husband and his heirs became vested with title to 160 acres of said land, was erroneous, for the reasons already assigned.

Under the second assignment it is insisted that the court erred in admitting in evidence the application of the guardian, M. Frances West, to the probate court for an order to sell an undivided interest of her wards, John G. West, Lou Willie West, and Crawford J. West, to certain land, and the order of the court granting the application and directing the sale. The objection urged is, that there was no sufficient description of the land intended to be sold.

The application for sale, and order of sale, described the land as an undivided interest of 75 acres in and to the 320-acre James De Armon survey, fully and accurately describing the 320 acres. This description was sufficient, and the court did not err in admitting the evidence.

Under this same assignment the probate sale of the 75-acre interest is attacked, upon the ground that the order of confirmation was only written upon the probate docket by the judge, and not carried into the minutes by the clerk.

There can be no question that prior to the adoption of the Revised Statutes of 1879 this probate sale would have been held valid upon collateral attack. Simmons v. Blanchard, 46 Texas, 266; Moody v. Butler, 63 Texas, 210; Neil v. Cody, 26 Texas, 290; Calloway v. Nicols, 47 Texas, 327.

It is urged that the principles announced in the above cases can not prevail under the Revised Statutes of 1879, carried into the revision of 1895. The contention can be stated best by quoting from the argument of counsel in their brief, as follows: "Prior to the Revised Statutes of 1879, the courts were liberal in allowing evidence of the action of the probate court. This was on account of the uncertain provisions of the probate laws. All the decisions to this effect are based on acts done before 1879. The Revised Statutes of 1879 are intended to remedy the evil. They clearly intend that all orders of the court shall be entered *in the minutes,* or they will be nullities. Articles 2557 and 2560 (Revised Statutes of 1895) require all orders in guardianship matters to be en-

tered in the minutes, and that the county judge shall see that this is done. Article 2675 requires that orders of confirmation, especially, shall be entered in the minutes. Article 2558 provides that the rules of estates of decedents shall apply to guardianship. Article 1846 requires the clerk to keep a book styled 'Probate Minutes,' in which he shall enter all orders, etc. Article 1872 says that when the word 'minutes' is used, it shall mean the probate minutes. Article 1853 provides that all such orders shall be entered in the record during the term at which rendered, and unless so entered they shall be nullities. The probate docket of the judge and the probate minutes are two different things. It seems clear from these provisions that unless the order is entered in the probate minutes it is a nullity."

Articles 1852 and 1853 provide: "1852. All decisions, orders, decrees, and judgments of the county court in probate matters shall be rendered in open court, and at a regular term of such court for civil and probate business, unless in cases where it is otherwise specially provided.

"1853. All such decisions, orders, decrees and judgments shall be entered on the records of the court during the term at which the same are rendered, and any such decision, order, decree, or judgment shall be a nullity unless entered of record."

It will be observed that article 1853 provides that orders not entered of *record* shall be a nullity. It uses the term *record,* not minutes. Article 1845 makes the probate docket a record. The article reads: "There shall be kept by the clerk of the county court a record book to be styled 'Judge's Probate Docket,' in which shall be entered," etc.

As this article makes this docket a part of the *record,* orders entered upon it can not come under the provision of the subsequent article (1853) denouncing as nullities all orders not "entered of record." Such orders should be carried into the regular minutes of the court, and it is so directed by the statute in articles 2557 and 2560; but the failure of the clerk to carry them into the minutes does not by force of the statute render them nullities and subject to collateral attack as void.

We think the principles announced in the cases cited have application to the question here presented under the Revised Statutes, and that they are adverse to appellant's position.

On the issue of limitations several questions are presented for consideration, which mainly relate to the sufficiency of the evidence to establish limitation under the five years statute. In view of the fact that the case is to be remanded for another trial, we will not discuss such features of the case. It is perhaps proper to say, that it is clear that the interest in the land devised to appellant by Mrs. Hardeman was not barred by limitation, as he was alleged and shown only to be 22 years old at the time suit was brought. As to the interest claimed by him under the deed from John G. and Lou Willie West (the latter now Mrs. McMillan), made in 1895, just before the institution of the suit, disability was not pleaded, and the facts unquestionably showed that they

were not under disability so as to shield their vendee against limitations of five years. We will not discuss the evidence as to possession and payment of taxes.

We will say further, that the court did not err in admitting as evidence tending to show payment of taxes, the certificates of the Comptroller and tax receipts.

It is asserted that the court erred in refusing to allow witness Collins to testify that the annual rental value of the land for two years prior to the institution of suit and to the time of trial was $2.50 to $3 per acre per year. The evidence was objected to upon the ground that plaintiff would not be entitled to recover rents with the improvements, but only the rental value without the improvements.

The court properly sustained the objection upon this ground, as it was unquestionably shown that defendants and those under whom they claim took possession of the land in an unimproved state, and the witness was proposing to testify as to the rental value of the land in its improved condition. Benson v. Cahill, 37 S. W. Rep., 1088; Van Zandt v. Brantley, 42 S. W. Rep., 617.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*